# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-01110-JLK

FLORITA PINEDA on her own behalf and
on behalf of all others similarly situated,

    Plaintiff,

v.

EL JACAL CORP d/b/a EL JACAL MEXICAN GRILL,
EL JACAL 2, LLC,
ANA MARTINEZ, and
JUAN MARTINEZ,

    Defendants.

---

## JOINT MOTION FOR FINAL APPROVAL OF
## CLASS AND COLLECTIVE ACTION SETTLEMENT

---

Plaintiff and Defendants (the "parties") submit this Joint Motion to request that the Court grant final approval to their class and collective action settlement.

## **INTRODUCTION**

In anticipation of the final fairness hearing set before this Court for March 25, 2020, the parties submit herewith their settlement agreement (Exhibit 1) and assert that the agreement satisfies all the criteria for final approval. The parties seek an order granting final approval to the agreement as fair and reasonable for the purposes of the Fair Labor

Standards Act (the "FLSA") and Federal Rule of Civil Procedure 23. The agreement is fair in broad terms because it provides for full recovery for all participating employees.

## **PROCEDURAL HISTORY**

On April 16, 2019, Plaintiff filed this class and collective action wage case to recover overtime wages she and her co-workers are due for the work they performed in Defendants' Mexican restaurants in Fort Morgan and Brush, Colorado. ECF No. 1. Wishing to focus their energies on settlement negotiations early in the litigation, the parties jointly moved for a stay, which the Court granted on May 14, 2019. ECF No. 9. On October 16, 2019, the Court entered an Order granting the parties' stipulation to issuance of FLSA notice and to certification of a Colorado Minimum Wage Order ("MWO") Rule 23 class. ECF No. 17. In its Order, the Court authorized dissemination of FLSA opt-in notice to potential Plaintiffs and, subsequently, dissemination of opt-out notice to Rule 23 class members. *Id.*

The Class Administrator delivered the FLSA opt-in notice to 36 FLSA collective action potential plaintiffs on October 30, 2019 (Defendants were unable to produce addresses for some of the potential opt-in plaintiffs.). Of those mailed, 2 were returned as undeliverable. Four potential FLSA plaintiffs submitted consent to join forms.

On January 17, 2020, after the parties reached terms of settlement, the Class Administrator mailed notices and opt-out forms to the Members of the Rule 23 Class who did not opt-in to the FLSA collective action, and for whom Defendants were able to produce addresses. The notice informed absent class members of the terms of the parties'

settlement, and their right to participate, opt-out or object to the settlement. Nine[1] Rule 23 Class Members opted-out of the settlement and no objections have been filed.

## SUMMARY OF THE SETTLEMENT TERMS

To determine the value of the Plaintiff's, the FLSA Opt-In Plaintiffs' and each Rule 23 Class Member's claims, Plaintiff and her counsel reviewed voluminous hand-written time-worked and wage payment records produced by Defendants and cross-checked those records against documents in Plaintiff's possession. Plaintiff and her counsel analyzed the time and pay records for the three-year FLSA statutory period and the two-year MWO statutory period, taking into account liquidated damages available to those employees who opted-in to the case. Defendants agreed to pay the FLSA opt-in Plaintiffs and the Rule 23 Class Members the full value of the damages calculated by Plaintiff and her counsel. The parties believe the agreement to be a fair and reasonable settlement of the FLSA collective and the MWO Rule 23 class claims.

The settlement provides that Defendants will make a Settlement Payment of up to $123,757.36[2] into a qualified settlement fund to be administered by the Class Administrator

---

[1] Because a significant number of class members opted-out of the case, counsel for Plaintiff interviewed four of the non-claiming class members who counsel could reach to investigate whether they had been improperly influenced to opt-out of the case. Manual for Complex Lit. § 21.12 (4th ed. 2004) ("Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)."). The interviewed class members reported no undue influence on their decision to opt-out.
[2] Defendants will make monthly payments to the qualified settlement fund account, each totaling $24,751.47, through June 1, 2020.

to compensate Plaintiff, the Opt-In Plaintiffs, and the Members of the Rule 23 Class who do not opt-out for their damages, inclusive of attorney fees and costs and an incentive award. In addition to and separately from the Settlement Payment, Defendants will pay all settlement administration costs and the employer's portion of required withholding and payroll taxes. The Plaintiff, the Opt-In Plaintiffs and the members of the Rule 23 Class who do not opt-out will be responsible for their respective federal, state and local tax obligations.

**Payment to the Class Members**

The parties propose that by the later of twenty (20) days after the Court's entry of an order granting final approval to the settlement, or twenty (20) days after Defendants make their final contribution to the qualified settlement fund as described in footnote two herein, the Settlement Administrator will mail settlement checks to Rule 23 Class Members and FLSA opt-in Plaintiffs (in amounts in accordance with the individual damages figures included in the Settlement Agreement), a check for attorney fees and costs to Plaintiff's counsel, and a check to the Incentive Award recipient Florita Pineda.

Any settlement checks issued by the Settlement Administrator that are not negotiated within 90 days of issuance will constitute "Unclaimed Funds." The class administrator will forward Unclaimed Funds to the Rocky Mountain Immigrant Advocacy Network, a 501(c)(3) organization that advocates for the rights of immigrants to Colorado.

**Service Award**

The Parties have agreed to the payment of a service award to the named Plaintiff and Rule 23 Class Representative Florita Pineda in the amount of $10,000.00 to

4

compensate her for her efforts to bring this matter to a successful conclusion on behalf of the opt-in Plaintiffs and the members of the Class and to compensate her for the risks inherent in initiating and participating in class litigation against her employers.

**Release of Claims**

In exchange for the Settlement Payment, Plaintiff, the opt-in Plaintiffs and Members of the Rule 23 Class who do not opt-out of the settlement will release Defendants from all claims which were pleaded in the Action.

**Attorney Fees and Costs**

Plaintiff's counsel separately and concurrently moves the Court for approval of an award of 33% of the Settlement Payment.

## ARGUMENT

**I. The Court Should Grant Final Approval to the Settlement as Fair and Reasonable for the Purposes of the FLSA**

A district court may approve an FLSA collective action settlement after "scrutinizing settlement for fairness" and deciding whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982).[3]

> [I]n determining whether to approve a FLSA settlement, [a court may consider] whether (1) the FLSA settlement is reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees. With respect to the second factor, [a court may] evaluate[], first, whether the settlement is fair and reasonable, and, second, whether the settlement undermines the purposes

---

[3] Counsel is aware that some Courts in this District do not require approval of FLSA collective action settlements. *See, e.g., Ruiz v. Act Fast Delivery of Colorado, Inc.*, No. 14-cv-00870-MSK-NYW, ECF No. 132 (D. Colo. Jan. 9, 2017). Having found no case describing this Court's view on whether court approval is required for FLSA settlements, the parties provide the analysis herein.

of the FLSA. In considering whether the FLSA has been undermined, [a court may] look[] at (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA.

*Herring v. Thunder Ridge Trucking and Filtration, Inc.,* 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

A. <u>The Parties Are Resolving a Bona Fide Dispute</u>

Parties seeking approval of an FLSA settlement may establish that a bona fide dispute exists by presenting: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Baker v. Vail Resorts Mgmt. Co.,* 2014 WL 700096, *1 (D. Colo. Feb. 24, 2014).

Here, as to *Baker* factor (1), the parties dispute whether Defendants violated the FLSA by failing to pay their employees overtime wages. As to *Baker* factor (2), the parties represent that Defendants own and operate Mexican restaurants in Fort Morgan and Brush, Colorado. The settling opt-in Plaintiffs worked as hourly food service employees in Defendants' restaurants.

As to *Baker* factor (3), though Defendants do not dispute their employees' right to be paid minimum and overtime wages pursuant to the FLSA, they do dispute whether they failed to pay overtime premiums in violation of the FLSA. The employees, on the other

6

hand, and in reference to *Baker* factor (4), allege that Defendants did in fact fail to pay overtime premiums in violation of the FLSA.

As to *Baker* factor (5), the parties agree, based on review of the opt-in Plaintiffs' time records, on the computation of wages owed. In light of the dispute as to Defendants' violation of the FLSA, "this case is not sham litigation… it very much involves a bona fide dispute between adversarial opponents." *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013).

### B. The Settlement is Fair and Equitable to All Parties

#### i. The Settlement is Fair and Reasonable

In determining whether an FLSA settlement is fair and reasonable, Courts consider the same factors applied in the Rule 23 settlement fairness analysis described in Section II, below. *Baker*, 2014 WL 700096, *2 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). The parties respectfully refer the Court to their argument in Section II below rather than repeating that argument here.

#### ii. The Settlement Does Not Undermine the FLSA

To find that an FLSA settlement does not undermine the Act, Courts query whether the proposed settlement adheres to the statute's purpose, which is to protect employees' rights from employers who generally wield superior bargaining power. *Baker*, 2014 WL 700096, *2. To make this determination, Courts look into (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA. *Herring*, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

### a. The Presence of Other Similarly-Situated Employees

Here, all Defendants' employees who were similarly situated to Plaintiff during the applicable statutory periods were included in the FLSA and Rule 23 Classes. The hybrid nature of Plaintiff's complaint ensured that all Defendants' employees who were disadvantaged by their employers' superior bargaining power, and who were allegedly denied overtime wage payments, would be included in the class settlement in the employees' favor. By including and recovering damages for all similarly-situated employees, this lawsuit countered the bargaining power advantage normally enjoyed by the Defendants. This settlement thus effectuates rather than undermines the purpose of the FLSA.

### b. The Likelihood that the Plaintiff's Circumstances Will Recur

Given that Defendants will pay a high price for their alleged violations of the FLSA, they have a strong incentive to refrain from engaging in conduct violative of the statute in the future. Concurrently, because Defendants' employees have now participated in a successful collective FLSA enforcement action, and because the class members are in contact with their counsel who specializes in FLSA litigation, Defendants are aware that any future violations of the statute would be very likely to come to light and be litigated, further deterring future violations.

### c. Whether the Defendants Have a History of Non-Compliance with the FLSA.

Defendants represent that they have never been part of an enforcement action brought by any governmental agency or private plaintiff seeking to enforce the FLSA.

Because there is no history of non-compliance with the FLSA, this factor weighs in favor of approval of this settlement.

### C. The Settlement Contains a Reasonable Award of Attorney Fees

Plaintiff separately and concurrently moves the Court for approval of Class Counsel's fee award totaling 33% of the Settlement Payment.

## II. The Settlement Agreement is Fair and Reasonable for the Purposes of Federal Rule of Civil Procedure 23

Rule 23 class claims may only be settled with the Court's approval. Fed. R. Civ. P. 23(e). The authority to approve a settlement of a class action suit is committed to the sound discretion of the trial court, and settlement approval will not be set aside absent an abuse of discretion. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir.1984). Courts apply the following factors to determine whether a proposed Rule 23 class action settlement is fair, reasonable and adequate:

(1) Whether the proposed settlement was fairly and honestly negotiated;

(2) Whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt;

(3) Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) Whether the parties' judgment is that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002).

### A. The Proposed Settlement was Fairly and Honestly Negotiated

This case was litigated, and the proposed settlement was reached, in the context of Plaintiff's federal class action lawsuit. Plaintiff and the absent class members were

represented by counsel with extensive experience in wage and hour class litigation. Defendants were advised by defense counsel experienced in wage and hour class litigation during settlement negotiations.[4] The parties reviewed all available time-worked and wage payment records. The Parties engaged in contested settlement negotiations. Counsel utilized their experience in similar class employment matters, and thoroughly analyzed the legal and factual issues, as well as each party's level of litigation risk, to arrive at a fair and reasonable settlement agreement.

B. <u>Serious Questions of Fact Do Not Exist</u>

There were not significant issues of fact or law at dispute in this case. For this reason, the Settlement Agreement provides for full recovery of all damages that the Members of the Rule 23 Class would recuperate if they were to prevail on all issues at trial.

C. <u>The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation</u>

The Members of the Rule 23 Class will recover all the damages that they would recuperate if they were to prevail on all issues at trial; any further litigation in this matter would yield little or no benefit to the Class members. Moreover, given the risks associated with further litigation, the Class members may recover less than $123,757.36 should the case proceed through trial. Thus, the proposed settlement outweighs any potential benefit of further litigation.

D. <u>It is the Parties' Judgment that the Settlement is Fair and Reasonable</u>

---

[4] Advising counsel did not enter an appearance in the matter.

The Parties, with the advice of experienced counsel, are confident that the settlement is fair and reasonable. The Court should approve the settlement as fair and reasonable for the purposes of Rule 23.

### III. The Service Award is Reasonable

Class representative plaintiffs are eligible for reasonable incentive payments as part of a class action settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The $10,000.00 service award here is appropriate because Class Representative Florita Pineda took a substantial risk in coming forward with reports of Defendants' wage and hour law violations when no other employees were willing to do so. Her risk resulted in full recovery for participating Class Members.

Further, Ms. Pineda is an immigrant to the United States who credibly feared that immigration and workplace consequences might result from her early and visible participation in the lawsuit. *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 561 (5th Cir. 2016) ("[E]mployers commonly and unlawfully retaliate against irksome workers by reporting or threatening to report them to immigration authorities.")(citing *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 886–87, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064–65 (9th Cir. 2004) (collecting cases)).

Plaintiff Pineda also materially assisted counsel in reviewing documents, communicating with class members and bringing the case to a successful conclusion to the benefit of all of her co-workers. Class Representative Pineda spent 128 hours reviewing voluminous, hand-written wage and hour records to determine each Class Member's unpaid wages due. She advocated for the interests of the Class Members and made sure that the interests of the Class were at the forefront of negotiations. The incentive award sought here is reasonable. *See*, *e.g.*, *Ramirez et al. v. El Tapatio, Inc. et al.,* Case No. 13-cv-00861-REB-BNB, Doc. No. 58 (D. Colo. 2013) (approving $10,000.00 incentive award to class representative in wage class action); *Pliego v. Los Arcos Mexican Restaurants, Inc.,* 313 F.R.D. 117, 131 (D. Colo. 2016) (In an FLSA collective case, the Court found that: "The stipulated $7,500.00 award here is appropriate and is commensurate with awards in similar cases.") (collecting cases)).

## **CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court enter an Order granting final approval to the Settlement Agreement as fair and reasonable for the purposes of the FLSA and Rule 23.

Respectfully submitted,


*s/ Brandt Milstein*  
Milstein Law Office  
2400 Broadway, Suite B  
Boulder, CO 80304  
303.440.8780  
brandt@milsteinlawoffice.com

*s/ Ana Martinez*  
301 Edison Street  
Brush, CO 80723  
970.542.5002  
anabellamom@hotmail.com

*Counsel for Plaintiff*

*s/ Juan Martinez*
903 Main Street
Fort Morgan, CO 80701

*Pro Se Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to all parties entitled to notice.

*s/ Brandt Milstein*